UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| vs. | ) | CAUSE NO.  3:09-CR-00067(03)RM |
| | ) | |
| SUZANNE MCCRAY | ) | |

<u>SENTENCING MEMORANDUM</u>

On March 25, 2009, Jacob Fry and Coty Fultz broke into a gun shop in Logansport, Indiana and stole sixteen firearms. Mr. Fry sold one of the guns in Logansport, then contacted Suzanne McCray to see if she knew anyone who might want to buy the rest of the guns. Ms. McCray found a buyer in Chicago and drove Mr. Fry and Mr. Fultz and the stolen guns there to meet him. Mr. Fry transferred the guns to the would-be buyer, but didn't get the expected payment in return. Ms. McCray pleaded guilty to transporting stolen firearms in interstate commerce in violation of 18 U.S.C. § 922(i).

Ms. McCray objected to ¶ 26 of the presentence report, which recommends a four-level enhancement for trafficking in firearms, U.S.S.G. §§ 2K2.1(b)(5), and to ¶ 28 of the report, which recommends against a reduction for acceptance of responsibility, U.S.S.G. § 3E1.1. The government had no objection to the presentence report. The court adopts as its own findings ¶¶ 1-25, 27, and 29-140 of the presentence report, specifically including ¶¶ 60-92 concerning Ms. McCray's financial condition and earning ability.

A sentencing court must first compute the guidelines sentence correctly, then decide whether the guidelines sentence is the correct sentence for that

defendant. <u>United States v. Santiago</u>, 495 F.3d 820, 825 (7th Cir. 2007). The court applies the 2009 version of the sentencing guidelines.

Ms. McCray was a "prohibited person" when she committed this crime, so her base offense level is **14**. U.S.S.G. § 2K2.1(a)(6)(A). Her offense level is increased by four levels because the crime involved fifteen firearms, U.S.S.G. § 2K2.1(b)(1)(B), and by another two levels, to level 20, because the firearms were stolen. U.S.S.G. § 2K2.1(b)(4)(A).

An additional four-level enhancement is required for an offender who engaged in the trafficking of firearms. U.S.S.G. § 2K2.1(b)(5). That enhancement applies to a person who (1) "received two or more firearms with the intent to transport, transfer, or otherwise dispose of firearms to another individual;" and (2) "knew or had reason to believe that such conduct would result in the transport, transfer, or disposal of a firearm to an individual . . . whose possession or receipt of the firearm would be unlawful; or  . . . who intended to use or dispose of the firearm unlawfully." U.S.S.G § 2K2.1, Application Note 13(A). Ms. McCray contends that there is no evidence that she knew or had reason to believe that the person to whom the guns were transferred fit that description, so the enhancement is inappropriate.

The cases cited by the government are not controlling, because they were decided before the guidelines added (in 2006) the commentary on which Ms. McCray relies: Application Note 13(B) now defines one whose possession of a firearm would be illegal as a person with a prior conviction of a certain type, or

2

one under a criminal sentence. Ms. McCray accurately notes that nothing in the sentencing record suggests that she had any reason to think the guns would be delivered to a person of that description.

Still, the enhancement applies if Ms. McCray knew or had reason to know that her conduct would result in the transfer of a firearm to a person who intend to use or dispose of the firearm unlawfully. Ms. McCray arranged the sale and transported the stolen firearms to a person who, having acquired the guns unlawfully on the streets of Chicago, was highly unlikely to use or dispose of them legally — leaving only the unlawful use-or-disposition inference as reasonable. But that outcome was less clear when Ms. McCray contributed her part to brokering the sale: she called someone she knew who had lived in Chicago and, when the return call came, simply handed the phone to Mr. Fry to work out the details. The government suspects from the number of calls to and from Chicago that Ms. McCray's involvement might have been greater than that, but no evidence makes it more likely than not. More might have been clear once Ms. McCray drove to the destination Mr. Fry had worked out, but Ms. McCray's options were fewer at that point.

The issue is quite close, but the court sustains Ms. McCray's objection to ¶ 26 of the presentence report. Her offense level remains at 20.

Ms. McCray contends that she has clearly demonstrated her acceptance of responsibility, entitling her to the reduction in offense level created by U.S.S.G. § 3E1.1. The presentence report recommends against such a reduction, and the

government reluctantly agrees. "Acceptance of responsibility," as the sentencing guidelines use the phrase, has a meaning different from ordinary usage; Application Note 1 to U.S.S.G. § 3E1.1 identifies factors that help breathe meaning into the phrase. Ms. McCray has done several things that are hallmarks of guideline-quality acceptance of responsibility: she admitted her conduct early on, she pleaded guilty, and in the last tow and a half months she has undertaken significant self-rehabilitation through the South Bend YMCA, including clean drug tests. On the other hand, while on pretrial release, she failed several drug tests and missed several others, she missed most of her drug counseling sessions, and she failed to appear for change of plea proceedings. The last two and a half months move Ms. McCray much closer to a finding of acceptance of responsibility, but her performance in the first six months of her release dug too deep a hole. Ms. McCray bears the burden of persuasion with respect to acceptance of responsibility, and she hasn't quite met it.

The court overrules Ms. McCray's objection to ¶ 28 of the presentence report. Her final adjusted offense level is 20.

Ms. McCray has two criminal history points—one point for her 2003 suspended sentence for check deception, and one point for her 2007 felony conviction and sentence for residential entry—placing her in criminal history Category II.

4

The advisory guideline range for an individual with an adjusted offense level of 20 in criminal history Category II is 37 to 46 months' imprisonment. U.S.S.G. § 5A.

The court uses the guideline range as the starting point and the initial benchmark, but doesn't presume that the recommended range is reasonable. <u>Gall v. United States</u>, 552 U.S. 38, 50 (2007). As just calculated, the sentencing guidelines, which ordinarily pose the best hope, on a national basis, for avoiding unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct, 18 U.S.C. § 3553(a)(6); <u>United States v. Boscarino</u>, 437 F.3d 634, 638 (7th Cir. 2006), recommend a sentencing range of **57 to 71** months' imprisonment. The statute of conviction allows any sentence up to 10 years. 18 U.S.C. § 924(a)(2). The government recommends a sentence of <u>37</u> months. The defense recommends a sentence well below the advisory range.

The court determines the sentence pursuant to 18 U.S.C. § 3553, <u>United States v. Booker</u>, 125 S. Ct. 738 (2005), seeking a reasonable sentence: one sufficient, but not greater than necessary, to satisfy the purposes of the sentencing statute. 18 U.S.C. § 3553(a).

Ms. McCray arranged the sale and transported 15 of the 16 stolen firearms across state lines for transfer to someone else. Only three of the guns have been recovered (one in Washington and two in Chicago). Her guilty plea spared the government the time and expense of trial and trial preparation.

5

Ms. McCray is 31 years old. She has two children ages 6 and 9 (Lisa Hite, the defendant's mother, has custody of both children), is divorced and remarried but separated. Ms. McCray earned her GED. She was unemployed since November 2008 until recently. Ms. McCray tested positive for marijuana six times while on pretrial release, missed six drug tests, and didn't attend counseling consistently. Ms. McCray is now participating in a residential domestic abuse and chemical dependence treatment program at the South Bend YWCA. She is doing well, impressing her counselors and testing clean.

Ms. McCray has a history of violence (both as a victim and as the perpetrator), substance abuse, noncompliance with court ordered supervision, and numerous arrests that didn't result in conviction and weren't reflected in her criminal history category. This is her second felony conviction. She has never served a sentence longer than six days. Her first contact with the criminal justice system occurred at age eighteen, when she was convicted of battery resulting in bodily injury.

Ms. McCray presents a greater than average risk of recidivism without proper treatment and ongoing cooperation with services. Her good performance in the YMCA program indicates an ability to reduce that risk.

Co-defendant Jacob Fry received 70 months (the low end of his guideline range), and co-defendant Coty Fultz received 33 months (a sentence slightly below his guideline range of 37 to 46 months).

6

The sentencing guidelines ordinarily are the best measurement of the need to reflect the crime's seriousness, to provide just punishment for the crime, and to deter others from committing the same sort of crimes. The guidelines are low with respect to the need to reflect the crime's seriousness. The sentencing guidelines necessarily produce enhancements on a one-size-fits-all basis, and that is true of the four-level enhancement assessed over Ms. McCray's objection. Ms. McCray knew the guns were stolen and that Mr. Fry wanted to transfer a large number of them quickly; whether the guns wound up being used for a legal purpose simply didn't concern Ms. McCray. At least one of the firearms was used in a crime, and most of them remain in circulation. While the four-level guideline enhancement is inappropriate, a two-level enhancement would be needed for the advisory sentence to reflect more precisely the seriousness of Ms. McCray's conduct.

The sentencing guidelines also are high with respect to the need to punish Ms. McCray. The guideline sentence is calculated without reduction for acceptance of responsibility, and properly so, given the number of drug tests Ms. McCray failed while on pretrial release. But she also did much that would bring her nearer a finding of acceptance of responsibility than the average defendant who receives no reduction: she acknowledged her guilt early on, she pleaded guilty, and she has begun significant self-rehabilitation since entering the YWCA program. A sentencing court can shape a sentence more finely than the

7

guidelines, and Ms. McCray's near-acceptance of responsibility should be worth a one-level reduction in her offense level.

Another one-level reduction is needed to fully tailor the need for punishment. Ms. McCray brought to her exchange with Mr. Fry a lifelong history of watching and experiencing men physically abuse women to get what they want. The court can't say for certain that her experience as a battered woman played any causative part in her crime, and there is no indication that Mr. Fry threatened any physical harm, but it seems that another level of reduction is needed to match the need for punishment to Ms. McCray.

The guidelines seem to have it about right with respect to the need to deter others from committing the sort of crime Ms. McCray committed. Reasonably uniform sentencing practices generally tend to promote respect for the law.

Finally, while the sentencing guidelines provide the best hope for avoiding unwarranted sentencing disparities on a national scale, the court may consider proportionality between co-defendants in an appropriate case, United States v. Bartlett, 567 F.3d 901, 909-909 (7th Cir. 2009), and this is such a case. Ms. McCray's co-defendant Coty Fultz played no part in brokering the intended sale in Chicago and didn't drive the guns to Chicago, but he participated in the burglary in which the guns were stolen and rode with the guns to Chicago. Mr. Fultz received a 33-month sentence; the court doesn't believe Ms. McCray should receive a greater sentence.

8

Given all the factors already discussed, a sentence of 33 months is sufficient but not greater than necessary to satisfy the purposes of 18 U.S.C. § 3553(a).

Restitution in the amount of $7.85499 is mandatory. A 3-year term of supervised release is appropriate. 18 U.S.C. § 3583(b)(2); U.S.S.G. § 5D1.2(a)(2). Ms. McCray cannot pay the fines required by the guidelines even if afforded the most generous of installment payment schedules, so the court imposes no fine. A special assessment of $100.00 is mandatory. 18 U.S.C. § 3013.

Accordingly, it is the judgment of the court that the defendant, Suzanne McCray, is hereby committed to the custody of the Bureau of Prisons to be imprisoned for a term of 33 months.

Upon release from imprisonment, the defendant shall be placed on supervised release for a term of 3 years. Within 72 hours of release from the custody of the Bureau of Prisons, the defendant shall report in person to the probation office in the district to which she is released. The conditions of supervised release shall be those set forth in ¶¶ 109-140 of the presentence report.

It is further ordered that the defendant shall make restitution payments to the United States District Court clerk, 102 Robert A. Grant Federal Building, 204 S. Main St., South Bend, Indiana 46601, in the total amount of $7,854.99, to be disbursed to Frankenmuth Mutual Insurance Company. The defendant shall notify the United States Attorney for this district within 30 days of any change in mailing or residence address that occurs while any portion of the restitution

remains unpaid. Restitution shall be due in full immediately and shall be paid at a rate of not less than $50.00 per month beginning 30 days after her placement on supervision. If at any time this defendant's restitution payments combine with restitution made on these claims by any other person to amount to $7,854.99 together with interest required by law, this defendant shall have no further obligation to make restitution under this order.

Because the defendant is not able and, even with the use of a reasonable installment schedule, is not likely to become able to pay all or part of the fine required by the sentencing guidelines, the court imposes no fine.

The defendant shall pay to the United States a special assessment of $100.00, which shall be due immediately.

Without objection from the government, the court finds by clear and convincing evidence that the defendant poses no risk of flight or danger to any other person or the community, and so grants her the privilege of voluntary surrender. The defendant shall report in person to the institution designated by the Bureau of Prisons, as advised by the United States Marshal, not later than 9:00 a.m. on May 17, 2010.

ENTERED:    March 9, 2010   


    /s/ Robert L. Miller, Jr.   
Judge
United States District Court

cc:   S. McCray
      B. Truitt

10

J. Barrett
USM
USPO